THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. FRANK MONTOYA MONTOYA, Defendant and Appellant.

Nos. CR-64-470,    Decided February 14, 1968.
CR-64-471,
CR-64-472.

E. *Armstrong Watlington, Edna Abruña Rodríguez,* and *Enrique Miranda Merced* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Adaljisa Díaz Collazo, Assistant Solicitor General,* for The People.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Frank Montoya Montoya was accused of firing at Roberto Escobar Vélez with a gun, with the intent to kill him, injuring him in the left leg. He was also accused of violating the Weapons Law, a felony and a misdemeanor.

Doctor Oscar Abriles testified that on June 30, 1960, he treated Escobar of a bullet wound in his left leg with an orifice of entry and exit.

Jorge Clemente París testified that on June 30, 1960, while he was crossing the avenue with Escobar and others, in front of Pier No. 3 of San Juan, three shots were fired at them by another group which was on the other side. He

saw defendant Montoya load and fire a gun which he took out from his waist. He fired at Escobar wounding him, and when he aimed at the witness, the latter hid under a car. After Montoya fired the gun he began to run, pursued by a Police Sergeant and other officers. No provocation had been made by the victim. The shooting occurred while the group, of which the witness and victim were a part, was going to picket with posters of the S.I.U. in front of *El Imparcial*, where a strike was going on. The witness identified the gun, and it was admitted in evidence.

When questioned by the defense he testified that he had told the prosecuting attorney that when his group was approaching, appellant stood up (he had said that he was seated), departed from the others in his group, and said: "Do not take another step forward." When Escobar stepped forward, the defendant loaded the revolver and aimed to the front. The witness ratified in court the expression "do not take another step forward."

Sergeant Amilcar Hernández of the Police testified that appellant passed by the place several times in an automobile; that he parked, opened the door, and remained sitting inside the vehicle. He heard three shots. He looked towards the place where he heard the shots, and he saw a man with a firearm standing in the middle of the street. It was appellant who was aiming towards the place where there was a group of persons, and he fired again, and a man came out holding his knee, running, and he fell in the middle of the Fernández Juncos Avenue. The Sergeant pointed out Montoya as the person who fired. He asked him to surrender the weapon, but appellant then ran with the revolver in his hand. The witness followed him at a distance of five or six feet; he kept on running along several streets, and when he reached the gate at the end of a warehouse, he placed the revolver on top of a table and he put his hands up. While Montoya ran he looked back once in a while, and aimed at the witness

with the weapon. The revolver contained four bullets which had not been fired. The witness identified the revolver admitted in evidence as appellant's revolver. He did not hear any other shots, nor did he see anyone else there with a firearm, not even Escobar. Appellant requested protection when arrested.

On cross-examination, he said that Montoya was the only person in the middle of the street with a revolver in his hand, and he denied that two shots went off accidentally when he seized the revolver. He found the three caps of the expended bullets in the place where the shots were fired, and identified them as evidence. Escobar was wounded by the second shot fired by defendant. When the group began to run, defendant turned around and fired again.

Appellant testified that the witness Clemente París was coming with other persons who were carrying clubs and he threw a club at him, they began to throw blows with sticks at them and a quarrel of about 30 persons ensued. Clemente attacked him, and appellant succeeded in grabbing the club from him, and hit him in the back with it. Then he heard an explosion, and they all ran, including him with the club in his hand. Someone was running behind him. Clemente got under an automobile. A group wanted to attack him after racing down the street, and he asked Sergeant Hernández for protection. He said that Sergeant Hernández ran after him with a revolver in his hand, and that he asked him to unload it. He refused, and the Sergeant began to "tamper" with the revolver, and two shots went off. He said that he did not know Escobar, nor had he ever seen him.

The record shows that these facts occurred during a strike period in the newspaper *El Imparcial*, where there were picket lines and intervention of two rival unions. Montoya's group belonged to a union which was the rival of the union of the other group to which the victim belonged.

The judgments of conviction were rendered by a court without a jury.

The only error appellant assigns on this appeal is:

"The specific intent, necessary to constitute the crime of assault to commit murder, does not arise from the evidence presented."

It was argued that the evidence did not establish that appellant had the specific intent to kill, and that rather it may be inferred that his intent "coincides" with the one defined in the crime of assault and battery.

■ Section 218 of the Penal Code—1937 ed.—provides that every person who assaults another *with intent to commit murder*, is punishable by imprisonment. . . . Murder—§ 199 —is the *unlawful killing* of a human being, with malice aforethought. Section 218, therefore, punishes the assault to commit unlawful murder with malice. See: *People v. Palóu*, 80 P.R.R. 351, 374 (1958).

Assault and battery is the use of any unlawful violence upon the person of another with intent to injure him. It is aggravated . . . when committed with deadly weapons. Act of March 10, 1904—33 L.P.R.A. § 821.

■ We agree that the crime of assault to commit murder requires an intent to kill—§ 218, *People v. Palóu, supra,* and cases cited therein, *People v. Rosario Centeno*, 90 P.R.R. 851 (1964)—and not merely an intent to injure.

■ But, as § 12 of the Penal Code states, the intent is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused; and a malicious intention is presumed from the manner and deliberation with which an unlawful act is intended or committed for the purpose of injuring another.

■ Malice, an element of murder, imports, among other things, the conscious violation of the law to the prejudice of another. Section 559 of Penal Code.

■ The intent, being a subjective element, arises from the circumstances attending the unlawful act, and the intent to kill arises when a person is assaulted with a deadly weapon in such a way that naturally, probably, and reasonably his death shall be caused *or his life endangered.* People v. *District Court,* 74 P.R.R. 783 (1953); *People* v. *Palóu, supra; People* v. *Santiago,* 54 P.R.R. 158 (1939).

■ Undoubtedly, under an information of assault to commit murder, there could be a conviction of aggravated assault and battery. It is a question of intent.

■ The evidence in the record, as believed, settled and weighed by the trial court, would not authorize us to rule that there is a total absence of evidence on the elements of an intent to kill; or that in the manner that appellant used the weapon and fired three times did not endanger the life of the victim and of the other persons who were near him. *People* v. *District Court, supra.*

Since said absence of evidence does not exist in the record, there is no reason to disturb the weighing thereof made by the trial court, as to an intent to commit murder.

The judgments appealed from will be affirmed.